**PERVEL INDUSTRIES, INC.**

v.

**STATE OF CONNECTICUT COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES et al.**

**Civ. No. H–78–459.**

United States District Court, D. Connecticut.

Oct. 16, 1978.

Thomas M. Cloherty, Murtha, Cullina, Richter & Pinney, Hartford, Conn., for plaintiff.

Christine G. Dunnell, Asst. Atty. Gen., Philip A. Murphy, Jr., Commission Counsel State Commission on Human Rights and Opportunities, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

■ This case presents the question of whether the Employee Retirement Income Security Act of 1974 (ERISA) preempts provisions of a state's anti-discrimination law insofar as that law affects employee welfare benefits.

Plaintiff and the union that represents its production and maintenance employees have collectively bargained for the establishment of an employee welfare benefit plan, which is regulated pursuant to ERISA. Among the benefits provided by the plan are disability benefits. Two employees, defendants in this action, applied for disability benefits for leaves of absence granted because of pregnancy. When benefits were refused, the employees filed complaints before the Connecticut Commission on Human Rights and Opportunities (CCHRO). A staff representative of the CCHRO notified plaintiff that the plan's failure to treat pregnancy as a nonoccupational disability constituted sex discrimination. Conn.Gen.Stat. § 31–126(g) prohibits an employer from denying an employee, "who is disabled as a result of pregnancy, any compensation to which she is entitled as a result of the accumulation of disability or leave benefits accrued pursuant to plans maintained" by the employer. On the basis of this view, a hearing has been ordered by the CCHRO, now scheduled for October 17, 1978. Plaintiff has brought this suit against the CCHRO, its director, the Connecticut Attorney General, and the two employees, seeking declaratory and injunctive relief to halt the administrative proceedings. Plaintiff has moved for summary judgment, and there are no material facts in dispute.

■ Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides that the provisions of subchapter I, concerning protection of employee benefit rights, "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee

benefit plan . . . ." The broad sweep of this language and the deliberate Congressional intention to accomplish broad preemption has recently been reviewed by this Court. *National Carriers' Conference Committee v. Heffernan,* 454 F.Supp. 914 (D.Conn.1978). It was there pointed out that Congress made a clear-cut decision not to identify various subjects on which state laws were to be preempted, but instead sought to avoid constant litigation over the scope of preemption by preempting, with certain specific exceptions, "all" state laws insofar as they "relate" to plans covered by ERISA. Plainly Connecticut's anti-discrimination law, legislating specifically on the subject of disability benefits, is a law that relates to an employee benefit plan. This Court therefore disagrees with the conclusion reached in *Bucyrus-Erie Co. v. Department of Industry, Labor and Human Relations,* 453 F.Supp. 75 (E.D.Wis.1978), that preemption of state anti-discrimination laws has not occurred because ERISA did not expressly provide that state fair employment laws are superseded. While preemption by implication is not favored, see *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), there is no requirement that Congress identify the several categories of state laws it wishes to preempt. Having elected to preempt all laws relating to covered plans, and to specify the categories of state laws that are not preempted, 29 U.S.C. § 1144(b)(2)(A), (b)(4), Congress is entitled to have its clearly expressed intentions carried out.

■ Nor is there merit in defendants' contention that ERISA preempts only those state laws that deal with the specific subjects covered by subchapter I of ERISA. This claim is refuted by the provisions of § 514(b)(4), explicitly excepting from preemption "any generally applicable criminal law of a State." If Congress had thought that only state laws specifically dealing

with the subjects covered by subchapter I of ERISA were to be preempted by § 514(a), it would not have had to preserve generally applicable criminal laws, since they would not have been preempted in the first place. The exception to preemption for generally applicable criminal laws becomes necessary only when it is understood that, without such an exception, § 514(a) preempts all state laws that relate to covered plans, whether the relation arises because a state law is specifically designed to affect such plans or because, as in this case, a state law of general application includes covered plans within its sweep.

Defendants also contend that § 514 does not accomplish preemption of Connecticut's anti-discrimination law because of the interaction of § 514(d) and provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Section 514(d), 29 U.S.C. § 1144(d), provides: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . ." Section 708 of Title VII, 42 U.S.C. § 2000e–7 provides: "Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State . . ." The argument is that ERISA does not supersede any federal law, Title VII preserves state anti-discrimination laws from preemption by Title VII, and "therefore" ERISA does not preempt state anti-discrimination laws. The argument has found favor with one district court, *Bucyrus-Erie Co., supra,* and with two state courts, *Goodyear Tire & Rubber Co. v. Department of Industry, Labor, and Human Relations,* 87 Wis.2d 56, 273 N.W.2d 786, 16 EPD ¶ 8163 (Circ.Ct. Dane County, Wis., 1978), and *Lukus v. Westinghouse Electric Corp.* (unreported) (Ct.Common Pleas, Allegheny Cty., Pa. Apr. 20, 1978),[1] and been implicitly rejected by

1. This line of reasoning also finds some support in *Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir. 1977). The First Circuit declined to find that ERISA preempted a provision of New Hampshire's insurance law, pointing out that such a

conclusion would be inconsistent with the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.,* which in turn ERISA "reaffirms" in § 514(d). 562 F.2d at 76 n. 33. The central reasoning of *Wadsworth,* however, is that

another state court, *Gast v. Oregon* (unreported) (Circ.Ct. Multnomah Cty., Ore. Nov. 16, 1977).

This Court does not accept the reasoning of this double savings clause contention. Section 514(d) of ERISA preserves *federal* law. Connecticut's anti-discrimination law does not become a federal law simply because Title VII preserves its validity as against a claim of preemption by Title VII. Nor is the textual argument significantly enhanced by focusing on § 514(b)'s requirement that ERISA should not be construed to "impair" any law of the United States. Preemption of Conn.Gen.Stat. § 31–126(g) by ERISA does not impair any federal law. Title VII did not create new authority for state anti-discrimination laws; it simply left them where they were before the enactment of Title VII. Whatever is prohibited by Title VII remains prohibited under ERISA, but exclusion of disability benefits for pregnancy does not violate Title VII, *Gilbert v. General Electric Corp.,* 429 U.S. 125, 97 U.S. 401, 50 L.Ed.2d 343 (1976).

Defendants stress the concern expressed in Congress during enactment of ERISA that plan benefits be made available on a non-discriminatory basis. In both the Senate and the House, anti-discrimination amendments were withheld upon the specific assurances of floor leaders of the legislation that plans covered by ERISA would be covered by § 703(a) of Title VII, 42 U.S.C. § 2000e–2(a). 120 Cong.Rec. 4726 (1974), 119 Cong.Rec. 30409–10 (1973). But nowhere in the floor debates is any concern expressed, nor any assurance given, that *state* anti-discrimination laws will apply to plans covered by ERISA. In fact the colloquy in both chambers points in exactly the opposite direction.[2] Both the floor managers of ERISA and those who sought assurance that non-discrimination amendments were not needed expressed concern that any such amendments might detract from the thrust toward centralized administration of non-discrimination in employment by the Equal Employment Opportunities Commission.

It is true that ERISA does not mandate uniformity of plan benefits, and therefore preemption of state anti-discrimination laws is not required to maintain any scheme for federally-required uniformity of benefits. But ERISA does contemplate that plans subject to the Act, once negotiated, will be uniformly administered, free of state law variations, except in the specific areas saved from preemption by § 514. Subjecting these plans to the varieties of state laws that relate to such plans can only add to the cost of administration and ultimately impose costs on the plan beneficiaries.

Plaintiff's motion for summary judgment is granted. Judgment may enter declaring that the Employee Retirement Income Security Act of 1974 preempts Conn.Gen.Stat. § 31–126 insofar as the provisions of the state statute apply to employee benefit plans subject to ERISA, and enjoining the defendants from further proceedings against the plaintiff with respect to the complaints of Henriette Deojay, dated June 2, 1977, and Linda Gelinas, dated June 7, 1977.

§ 514(b)(2)(A) of ERISA explicitly saves state insurance laws from preemption.

**2.** Similar evidence of Congressional intent may be gleaned from the Senate debate concerning the Age Discrimination in Employment Act Amendments of 1978 (ADEA), Pub.L. 95–256, 92 Stat. 189 *et seq.* (amending 29 U.S.C. § 623 *et seq.* (1970)). Senator Javits noted, and Senator Williams agreed, that the new federal law, like existing state age discrimination laws, would not interfere with ERISA. Specifically, ERISA was understood to preempt state age discrimination laws relating to employee benefit plans, and this preemption "shall be determined without regard to section 514(d) of ERISA or the fact that the ADEA does not itself preempt State law." 124 Cong.Rec.S. 4451 (daily ed. Mar. 23, 1978). This explicit acknowledgement by Senate architects of ERISA that state age discrimination laws were not to be preserved either by ERISA itself nor through a double savings clause construction of ERISA and ADEA strongly supports the argument that ERISA wholly preempts the state sex discrimination laws at issue here.