**DELTA AIR LINES, INC., Allegheny Airlines, Inc., National Airlines, Inc., Piedmont Aviation, Inc., Braniff Airways, Inc., North Central Airlines, Inc., Southern Airways, Inc., Eastern Air Lines, Inc., Northwest Airlines, Inc., Trans World Airlines, Inc., Ozark Air Lines, Inc., American Airlines, Inc., Pan American World Airways, Inc., and United Air Lines, Inc., Plaintiffs-Appellees-Cross-Appellants,**

v.

**Werner H. KRAMARSKY, Individually and in his capacity as Commissioner of the New York State Division of Human Rights; Ann Thacher Anderson, Individually and in her capacity as General Counsel of the New York State Division of Human Rights; The New York State Division of Human Rights, an agency of the Executive Department of the State of New York; Arthur Cooperman, Individually and in his capacity as Chairman of the New York State Workmen's Compensation Board; and the New York State Workmen's Compensation Board, Defendants-Appellants-Cross-Appellees.**

No. 18, Docket 80–7179.

United States Court of Appeals, Second Circuit.

Originally Argued Sept. 25, 1980.

Decided May 11, 1981.

Petition for Rehearing filed June 9, 1981.

Decided Nov. 24, 1981.

J. Stanley Hawkins, Dean Booth, Keith M. Wiener, Kilpatrick & Cody, Atlanta, Ga., for plaintiffs-appellees-cross-appellants Delta Air Lines, Inc., et al.

Ann Thacher Anderson, Gen. Counsel, State Division of Human Rights, New York City, for defendants-appellants Werner H. Kramarsky, et al.

Myrna M. Martinez, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Shirley Adelson Siegel, Solicitor Gen., Peter Bienstock, Asst. Atty. Gen., Daniel Berger,

Deputy Asst. Atty. Gen., New York City, on the brief), for defendants-cross-appellees Arthur Cooperman, et al.

Constance L. Dupre, Acting Gen. Counsel, Philip B. Sklover, Acting Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, Carol Cresswell Moschandreas, Washington, D. C., for Equal Employment Opportunity Commission as amicus curiae.

Before MOORE and KEARSE, Circuit Judges, and TENNEY,* District Judge.

KEARSE, Circuit Judge:

Our original opinion on this appeal, reported at 650 F.2d 1287, held, *inter alia*, that § 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a) (1976), did not preempt New York's Human Rights Law ("HRL"), N.Y.Exec.Law § 296 (McKinney 1972 & Supp.1980–1981), insofar as the HRL required employers who maintained employee disability benefit plans to provide benefits for disability due to pregnancy during the period from December 30, 1976, to April 29, 1979. We granted the rehearing petition of plaintiffs-appellees Delta Air Lines, Inc., et al. in order to reconsider that holding[1] in light of the Supreme Court's subsequent decision in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). At issue here is whether, and to what extent, *Alessi* affects the precedential weight to be accorded the Supreme Court's earlier dismissal, for want of a substantial federal question, of an appeal in *Minnesota Mining & Manufacturing Co. v. Minnesota*, 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980), *dismissing appeal from* 289 N.W.2d 396 (Minn.1979) (hereinafter "*Minnesota*"), the decision that compelled our conclusion that ERISA did not preempt the HRL. Believing that *Alessi* has effectively overruled *Minnesota*, we now vacate so much of our prior opinion

---

* Honorable Charles H. Tenney, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

1. To the same limited extent we also granted the rehearing petitions of the employers in *Burroughs Corp. v. Kramarsky*, 650 F.2d 1308, and *Metropolitan Life Ins. Co. v. Kramarsky*, 650

F.2d 1309, which were decided with, and which relied on, our prior decision in this action. Our decisions in *Burroughs v. Kramarsky*, 650 F.2d 1308 and *Metropolitan Life v. Kramarsky*, 650 F.2d 1309, are modified today, by separate orders, in accordance with our decision in the present case.

as held that 514(a) of ERISA did not preempt § 296 of the HRL, and we affirm the judgment of the district court insofar as it enjoined enforcement of the HRL.

### The Summary Dismissal in Minnesota

In *Minnesota*, the Minnesota Supreme Court had held that a Minnesota statute that required employers to treat pregnancy the same as other disabling conditions for purposes of disability benefit plans, was not preempted by ERISA. The state court's decision was appealed to the United States Supreme Court pursuant to 28 U.S.C. § 1257(2) (1976), requiring the Court to rule on the merits of the state court's judgment. The Supreme Court, declining to receive briefs or hear oral argument, dismissed the appeal for want of a substantial federal question, thus leaving the state court judgment intact. As discussed in our prior opinion, familiarity with which is assumed, Supreme Court dismissals for want of a substantial federal question "are judgments on the merits ... with respect to the 'precise issues presented [to the Supreme Court] and necessarily decided' by it in disposing of the appeal." 650 F.2d at 1295 (quoting *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977) (per curiam)). In the absence of any further enlightenment by the Court, such judgments must be followed by the lower courts, *e.g., Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). Thus we were compelled to view the Supreme Court as having ruled in *Minnesota* that ERISA did not preempt the *Minnesota* statute. Since the New York HRL is virtually identical to the *Minnesota* statute, we concluded that under the rule of *Minnesota* ERISA did not preempt HRL § 296.

Nevertheless, summary decisions of the Supreme Court are binding on the lower courts only "until such time as the Court informs [them] that [they] are not." *Hicks v. Miranda, supra,* 422 U.S. at 345, 95 S.Ct. at 2289 (quoting *Doe v. Hodgson*, 478 F.2d 537, 539 (2d Cir.), *cert. denied*, 414 U.S. 1096, 94 S.Ct. 732, 38 L.Ed.2d 555 (1973), *application denied*, 500 F.2d 1206 (2d Cir. 1974)). Such information obviously may come in the form of an express overruling of a prior summary decision, but it need not be so direct. As the Court has recognized, even absent an explicit statement that the decision has been overruled, departure from a summary precedent may be warranted on the basis of "doctrinal developments" in the Court's subsequent decisions. *Hicks v. Miranda, supra,* 422 U.S. at 344–45, 95 S.Ct. at 2289–90 (quoting *Port Authority Bondholders Protective Committee v. Port of New York Authority*, 387 F.2d 259, 263 n.3 (2d Cir. 1967)). *See also Heaney v. Allen*, 425 F.2d 869, 870–71 (2d Cir. 1970). Since in *Alessi* the Supreme Court did not state in terms that it was overruling *Minnesota*, nor, indeed, even mention *Minnesota*, the questions here are whether *Alessi* is a "doctrinal development" that invalidates *Minnesota*, and, if it is, whether it compels us to hold that the HRL was preempted. We answer both questions in the affirmative.

### Alessi as a Doctrinal Development

We regard the teaching of *Alessi* as incompatible with *Minnesota's* ruling that ERISA does not preempt state statutes that regulate the nature of the benefits an employer must provide in his employee benefit plans. *Alessi* involved a different type of regulation, but the starting point for its analysis is that which must be used here, and the course and final resting place of its analysis is no less instructive here.

The employee benefit plans challenged by retired employees in *Alessi* integrated pension benefits with workers' compensation benefits; they provided that an employee's retirement benefits would be reduced by an amount equal to any workers' compensation awards for which the retiree was eligible. The statute at issue was the New Jersey workers' compensation law, which forbade such reductions with respect to retirement pension benefits but allowed them with respect to disability pension benefits. After district court rulings that the New Jersey statute invalidated the plans and was not superseded by ERISA, the Court of Appeals for the Third Circuit reversed, concluding that, since the purpose of the state statute was to impose an additional statutory re-

quirement for pension plans, the statute was preempted by ERISA.

The Supreme Court, after plenary consideration, agreed with the appellate court that ERISA preempted the New Jersey statute. Recognizing that the preemption of state law by federal law is not lightly to be inferred, 101 S.Ct. at 1905, the Court found that in ERISA § 514(a) Congress had expressly stated its intention to preempt the field of pension plan regulation:

In this instance, we are assisted by an explicit congressional statement about the pre-emptive effect of its action. The same chapter of ERISA that defines the scope of federal protection of employee pension benefits provides that

"the provisions of this Subchapter . . . shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under 1003(b) of this title." [§ 514(a)].

This provision demonstrates that Congress intended to depart from its previous legislation that "envisioned the exercise of state regulation over pension funds," *Malone v. White Motor Corp.*, 435 U.S. 497, 512, 514, 98 S.Ct. 1185, 1194, 1195, 55 L.Ed.2d 443 (1978) (plurality opinion), and meant to establish pension plan regulation as exclusively a federal concern.

*Id.* at 1906 (footnote omitted).

To determine the applicability of § 514(a) the Court had to decide whether the New Jersey statute, which did not purport to regulate pension plans *qua* pension plans, was a law that "relate[d] to any employee benefit plan." Having ruled in an earlier section of its opinion that ERISA, despite the silence of its terms and legislative history on the subject, permitted an employer to integrate pension benefits with workers' compensation benefits, *id.* at 1900–05, the Court found that the New Jersey statute did "relate" to such plans, even if its regulation was indirect rather than direct:

Whatever the purpose or purposes of the New Jersey statute, we conclude that it "relate[s] to pension plans" governed by

ERISA because it eliminates one method for calculating pension benefits—integration—that is permitted by federal law. . . .

It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law rather than directly, through a statute called "pension regulation." ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern. For the purposes of the pre-emption provision, ERISA defines the term State to include: "a State, or any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, *directly or indirectly* the terms and conditions of employee benefit plans covered by this title." 29 U.S.C. 1144(c)(2) (emphasis added). ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision.

*Id.* at 1907 (emphasis in original).

In addition, the Court rejected an argument that ERISA's preemption provision should not be applicable to the New Jersey statute in light of provisions exempting certain types of benefit plans from ERISA's coverage. Specifically, the plaintiff retirees argued that if the benefit plans in question had been maintained solely to comply with New Jersey's workers' compensation law, the plans would be exempt from ERISA's scope, §§ 4(b)(3), 514(a), 29 U.S.C. §§ 1003(b)(3), 1144(a) (1976), and that if plans maintained solely to comply with a certain law are not covered, that law should not be deemed preempted. The Court rejected this reasoning on the basis of the "plain language" of § 514(a), stating as follows:

The only relevant state laws, or portions thereof, that survive this pre-emption provision are those relating to plans that are themselves exempted from ERISA's scope.

*Id.* at 1906 n.20.

The fact that *Alessi* dealt with pension benefit plans, rather than with disability

benefit plans such as those at issue in *Minnesota* and the present case, is of no moment. Section 514(a) speaks in terms of "any employee benefit plan"; employee pension benefit plans and employee disability benefit plans are equally species of this genus. Thus preemption rules with regard to statutes that relate to pension benefit plans are equally applicable to statutes that relate to disability benefit plans. We summarize *Alessi's* formulation of those rules as follows. ERISA § 514(a) states Congress's intention to establish employee benefit plan regulation as exclusively a federal concern. 101 S.Ct. at 1906. The only relevant state laws that survive this preemption provision are those relating to plans that are themselves exempt from ERISA's scope. *Id.* n.20. A state statute that eliminates from ERISA-covered employee benefit plans features that are permitted by federal law is preempted. *Id.* at 1907.

Although the *Alessi* Court did not purport to determine the outer limits of § 514(a)'s preemptive reach, these principles amply cover the *Minnesota* situation. The disability benefit plans at issue in *Minnesota* were covered by ERISA. Federal law permitted an employer to choose whether or not to provide pregnancy benefits in disability benefit plans. The *Minnesota* statute requiring an employer to provide pregnancy benefits as part of such plans "relate[d]" to ERISA-covered plans. And ERISA has preempted the regulatory field for plans within its scope. Had the principles stated in *Alessi* been applied to the *Minnesota* statute, the statute could not have been upheld. We thus conclude that *Minnesota* has been overruled in principle by *Alessi.* Although we would naturally feel more confident of this conclusion had *Minnesota* been mentioned in the Court's opinion in *Alessi*, we regard the development of obviously applicable principles in *Alessi* as the sort of doctrinal development referred to in *Hicks v. Miranda, supra,* by which the Court instructs us that a prior summary decision is no longer controlling.

*Effect of Alessi on the HRL*

Our conclusion that the principles stated in *Alessi* are incompatible with the result in *Minnesota* answers the question of *Alessi's* effect on our original holding, on the basis of the indistinguishable statute in *Minnesota*, that the HRL was not preempted by ERISA. As we discussed in that earlier opinion, during the time period relevant in the present case, federal law permitted employers to provide or exclude benefits for pregnancy-related disability as they pleased or as they might agree through collective bargaining. *See* 650 F.2d at 1291–92. By requiring employers to provide pregnancy benefits, the HRL applied directly to matters that federal law then reserved to private choice, and it eliminated one permissible method for allocating the cost of pregnancy-related disability. Thus, under the teaching of *Alessi,* the HRL "relate[d] to" ERISA-governed benefit plans within the meaning of ERISA 514(a), and it was therefore preempted by that provision.

In reaching this conclusion we reject the suggestion of the Equal Employment Opportunity Commission as amicus curiae that we should find *Minnesota* untouched by *Alessi* on the basis of the "double savings clause argument." As we noted in our original opinion, 650 F.2d at 1295 n.10, this argument focuses on ERISA § 514(d), 29 U.S.C. § 1144(d), which exempts other federal laws, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1976) ("Title VII"), from supersedure by ERISA. Title VII, in turn, exempts state fair employment laws from preemption by Title VII. 42 U.S.C. § 2000e–7. The double savings clause argument urges that the net effect of these two provisions is to exempt state fair employment practice laws from preemption by ERISA. *See, e.g., Westinghouse Electric Corp. v. Maryland Commission on Human Relations,* 520 F.Supp. 539 (D.Md.1981). We rejected this argument in *Pervel Industries, Inc. v. Connecticut Commission on Human Rights & Opportunities,* 603 F.2d 214 (2d Cir. 1979), aff'g 468 F.Supp. 490 (D.Conn.1978), *cert. denied,* 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980), and we adhere to that rejection here. In granting summary judgment in favor of the employer in *Pervel,* then-District Judge Newman gave two sound reasons for rejecting the double sav-

ings clause argument. First, during the debates in the Senate on the Age Discrimination in Employment Act (ADEA) Amendments of 1978, there was an "explicit acknowledgement by Senate architects of ERISA" that neither ERISA nor a double savings clause interpretation of ERISA and ADEA preserved state age discrimination laws; Judge Newman concluded that these remarks supported the argument that ERISA preempted the state sex discrimination laws at issue in *Pervel*. 468 F.Supp. at 493 n.2. Second, although Title VII saves state discrimination laws from preemption, it does not transform those laws into federal laws, and only federal laws are protected from preemption by ERISA. *See id.* at 493. Therefore, ERISA § 514(d) provides no basis for holding that HRL § 296 has not been preempted.

Accordingly, we vacate our prior opinion insofar as it held, on the basis of *Minnesota,* that the HRL was not preempted during the relevant period,[2] and we affirm the judgment and order of the district court, 485 F.Supp. 300, to the extent that it held that the HRL was unenforceable. Our remand to the district court with respect to other issues remains unchanged.

---

**2.** We also vacate, as no longer necessary to our decision concerning the enforceability of the HRL, those portions of our prior opinion in which we held that the HRL was not preempted by either Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1976), or by the Railway Labor Act, 45 U.S.C. §§ 151–188 (1976). *See* 650 F.2d at 1296–1301. The rationale of those discussions remains applicable, however, to the sections of our prior opinion that held that New York's Disability Bene-

fits Law, N.Y. Work. Comp. Law § 205(3) (McKinney Supp. 1980–1981), insofar as it requires employers to provide certain minimum benefits for pregnancy-related disability, is not preempted by Title VII or the Railway Labor Act. *See* 650 F.2d at 1301–02.

